**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | |
|---|---|
| BARBARIETTA TURNER-PUGH, *Ph.D.*, *et al.*,     Plaintiffs, | ) ) ) ) |
| v. | )   CIVIL ACTION NO. 1:23-00294-TFM-N ) |
| MONROE COUNTY BOARD OF EDUCATION, *et al.*,     Defendants. | ) ) ) ) |

## REPORT AND RECOMMENDATION

This civil action is before the Court on the motion to dismiss the first amended complaint (Doc. 18) under Federal Rule of Civil Procedure 12(b)(6) ("failure to state a claim upon which relief can be granted") (Doc. 21), with separate supporting memorandum (Doc. 22), filed October 18, 2023, by Defendants the Monroe County Board of Education ("the Board"), the Monroe County School System ("the School System"), and Gregory Shehan, who is sued both individually and in his official capacity as the School System's Superintendent (collectively, "the Defendants").[1] The

---

[1] While the initial complaint (Doc. 1) named the five individual members of the Board as additional defendants, they were dropped as defendants from the first amended complaint (Doc. 18) that was filed with leave of court (*see* Doc. 17). Thus, all claims against those defendants have been abandoned. *See Pintando v. Miami-Dade Hous. Agency*, 501 F.3d 1241, 1243 (11th Cir. 2007) (per curiam) ("As a general matter, '[a]n amended pleading supersedes the former pleading; the original pleading is abandoned by the amendment, and is no longer a part of the pleader's averments against his adversary.'" (quoting *Dresdner Bank AG, Dresdner Bank AG in Hamburg v. M/V OLYMPIA VOYAGER*, 463 F.3d 1210, 1215 (11th Cir. 2006) (citation and quotation omitted))); *Fritz v. Standard Sec. Life Ins. Co. of New York*, 676 F.2d 1356, 1358 (11th Cir. 1982) ("Under the Federal Rules, an amended complaint supersedes the original complaint.").

assigned District Judge has referred said motion to the undersigned Magistrate Judge for appropriate action under 28 U.S.C. § 636(a)-(b), Federal Rule of Civil Procedure 72, and S.D. Ala. GenLR 72(a). *See* S.D. Ala. GenLR 72(b); (10/18/2023 electronic reference notation).

In accordance with the Court's briefing schedule (Doc. 23), the Plaintiffs—Barbarietta Turner-Pugh, L'Nari Turner, Lizzie Ingram, and Alicia Salter—filed a response brief in partial opposition to the motion (Doc. 26), and the Defendants filed a brief in reply to the response (Doc. 27). The motion to dismiss is now under submission and ripe for disposition. Upon due consideration, the undersigned finds that the motion is due to be **GRANTED in part**, **DENIED in part**, and found **MOOT in part**, as set out herein.

## I. *Legal Standards*

In deciding a motion to dismiss under Rule 12(b)(6) for failure to state a claim upon which relief can be granted, generally "the 'scope of the review must be limited to the four corners of the complaint.' " *Speaker v. U.S. Dep't of Health & Hum. Servs. Centers for Disease Control & Prevention*, 623 F.3d 1371, 1379 (11th Cir. 2010) (quoting *St. George v. Pinellas Cnty.*, 285 F.3d 1334, 1337 (11th Cir. 2002)). The Court must "accept the allegations in the complaint as true and construe them in the light most favorable to the plaintiff." *Duty Free Ams., Inc. v. Estee Lauder Companies, Inc.*, 797 F.3d 1248, 1262 (11th Cir. 2015).

## II.    *Claims in the First Amended Complaint*

A detailed recitation of the factual allegations in the first amended complaint is unnecessary to resolve the present motion. In brief, the Plaintiffs allege the following claims and causes of action arising out of their employment with the Board:[2]

- Count I – Race and Sex Discrimination, and Retaliation, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, by all Plaintiffs against the Board, Shehan, and Fictitious Defendants A-Z.[3]

- Count II – Discrimination in violation of Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681(a), by Turner-Pugh against the School System, the Board, Shehan, and Fictitious Defendants A-Z.

- Count III – Defamation of Character, by all Plaintiffs against the Board, Shehan, and Fictitious Defendants A-Z.[4]

---

[2] Turner-Pugh remains employed with the Board as of the filing of the first amended complaint, while the other Plaintiffs are all former employees.

[3] Count I also asserts in passing discrimination/retaliation based on "age," but age is not a protected characteristic under Title VII. *See* 42 U.S.C. § 2000e-2 (prohibiting certain employment practices made "because of [an] individual's race, color, religion, sex, or national origin").

[4] Count III is also alleged against Sabrina Kidd, who is also at times identified as a "Defendant" in the "Facts" section of the first amended complaint. While Kidd was clearly a named defendant in the initial complaint, she is not listed as a defendant in either the caption, *see* Fed. R. Civ. P. 10(a), or the "Parties" section of the first amended complaint. The undersigned will assume that Kidd's inclusion as a "Defendant" in Count III and in the "Facts" section of the first amended complaint are drafting errors inadvertently left in during amendment of the initial complaint, and does not deem Kidd to be an active defendant to this case under the first amended complaint. *See* n.1, *supra.*

- Count V[5] – Breach of Contract, by Turner-Pugh and Ingram against Shehan and the Board.

- Count VI – Wrongful termination in violation of the Americans with Disabilities Act ("ADA"), by Salter against the Board.

- Count VIII[6] – Violations of the Equal Pay Act, by Turner-Pugh against the Board, Shehan, and Fictitious Defendants A-Z.

### III.   *Analysis*

### a.   <u>The School System</u>[7]

First, the Defendants argue that the School System "does not exist as a legal entity separate from the Monroe County Board of Education" and "is therefore not an entity subject to suit." (Doc. 22, PageID.181). In response, the Plaintiffs "concede" this point and assert that "all reference to 'Monroe County School System' should be understood to be claims against the Monroe County School Board." (Doc. 26, PageID.198).

Federal Rule of Civil Procedure 41(a)(1) generally permits a plaintiff to "dismiss an action without a court order by filing…a notice of dismissal before the opposing party serves either an answer or a motion for summary judgment…" Fed. R. Civ. P. 41(a)(1)(A)(i). Such "dismissal is effective immediately upon the filing of a written notice of dismissal, and no subsequent court order is required." *Matthews v.*

---

[5] The first amended complaint omits a Count IV.

[6] The first amended complaint omits a Count VII.

[7] For purposes of clarity and flow, the undersigned addresses the issues raised in the motion to dismiss in a different order than have the Defendants.

*Gaither*, 902 F.2d 877, 880 (11th Cir. 1990) (per curiam). In multidefendant cases, "Rule 41 allows a plaintiff to dismiss all of his claims against a particular defendant." *Klay v. United Healthgroup, Inc.*, 376 F.3d 1092, 1106 (11th Cir. 2004). *Accord Amerisure Ins. Co. v. Auchter Co.*, 94 F.4th 1307, 1311 n.5 (11th Cir. 2024). That a plaintiff's filing is not expressly labeled a "notice of dismissal" does not prevent it from being treated as such, so long as the plaintiff's desire to dismiss is apparent and the conditions of Rule 41(a)(1)(A)(i) are satisfied. *See Matthews*, 902 F.2d at 880 ("The fact that a notice of dismissal is styled 'motion to dismiss' rather than 'notice of dismissal' is without consequence.").

Here, the Plaintiffs' response brief makes clear that they no longer wish to maintain any claims against the School System, and no defendant filed an answer or a motion for summary judgment prior to the Plaintiffs' response brief. Accordingly, the undersigned will recommend that the Plaintiffs' response brief (Doc. 26) be treated as a Rule 41(a)(1)(A)(i) notice of voluntary dismissal of all claims against the School System, effective upon its filing. Accordingly, the present motion to dismiss is due to be found **MOOT** as to the claims against the School System.[8]

### b. Fictitious Defendants

In addition to the named Defendants, the Plaintiffs' first amended complaint also asserts claims against "Fictitious Defendants, A-Z (In their personal and/or

---

[8] For what it's worth, none of the claims in the first amended complaint appear to have been expressly asserted against the School System.

official capacities).” The undersigned agrees with the Defendants that the “Fictitious Defendants” are due to be dismissed as insufficiently pleaded.

"As a general matter, fictitious-party pleading is not permitted in federal court.” *Richardson v. Johnson*, 598 F.3d 734, 738 (11th Cir. 2010) (per curiam). The Eleventh Circuit has “created a limited exception to this rule when the plaintiff's description of the defendant is so specific as to be ‘at the very worst, surplusage.’ ” *Id.* (quoting *Dean v. Barber*, 951 F.2d 1210, 1215-16 (11th Cir. 1992)). That is, when a complaint provides a reasonably specific description of an unnamed defendant, the fact that the plaintiff may use a name like “John Doe” or “Fictitious Defendant A” to identify that defendant is, “at the very worst, surplusage.” *Dean*, 951 F.2d at 1215 n.6.[9] As *Dean* explained: “It is important to distinguish suing fictitious parties from real parties sued under a fictitious name. There may be times when, for one reason or another, the plaintiff is unwilling or unable to use a party’s real name. Also, one may be able to describe an individual (e.g., the driver of an automobile) without stating his name precisely or correctly.” *Id.* at 1215-16 (quotation and footnote omitted).

---

[9] *See also id.* (“(“The district court presumably relied on Dean’s use of the name ‘John Doe’ to deny Dean’s joinder motion. We find Dean’s use of the name to be, at the very worst, surplusage. Dean specified the person in charge of the Jefferson County Jail. If no similar post existed, we might be influenced to find that Dean had chosen a fictitious defendant. Here, though, the proposed defendant existed; and Dean adequately described the person to be sued so that the person could be identified for service. The analogue would be a case in which the governor of a state had been sued: a pleading, especially a pro se pleading, specifying only the ‘Governor of Alabama’ as a defendant would—we suppose—satisfy Fed. R. Civ. P. 10(a) even if the plaintiff did not use the governor’s given name.”).

The first amended complaint comes nowhere close to describing any of the fictitious defendants with the requisite level of specificity. Rather, the Plaintiffs describes the fictitious defendants in group fashion as all being "over the age of 19 years[,] residents of Alabama[, possibly employers within the meaning of Title VII [and] Title IX[, and] operating within this County, District and Division." (Doc. 18, PageID.142). Moreover, the fictitious parties are only generally and collectively alleged to have participated in many of the acts or omissions underlying the Plaintiffs' claims, without any attempt to attribute specific acts or omissions to a particular fictitious defendant. This is simply not enough to permit fictitious party pleading in this instance. *Compare Richardson*, 598 F.3d at 738 (holding that the *pro se* prisoner plaintiff's description of a defendant "as 'John Doe (Unknown Legal Name), Guard, Charlotte Correctional Institute'…was insufficient to identify the defendant among the many guards employed" at the correctional institute where the underlying incident occurred), *with Dean*, 951 F.2d at 1216 ("Under the circumstances in this case, Dean should have been allowed to add 'Chief Deputy of the Jefferson County Jail John Doe' as a defendant. *See, e.g.*, *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980) (allowing use of unnamed defendant where it was clear that discovery would uncover defendant's identity). Dean described with sufficient clarity the head of the Jefferson County Jail as his additional defendant and brought to the attention of the court that Dean had yet to receive Sheriff Bailey's report, which would have provided Dean with the information needed to specifically name the 'Chief.' Further, Dean's description was sufficiently clear to allow service of process on the 'Chief.' *See*

*Keno v. Doe*, 74 F.R.D. 587, 588 n.2 (D.N.J. 1977) ('[C]omplaint should state that the name is fictitious and provide an adequate description of some kind which is sufficient to identify the person involved so that process can be served.'), *aff'd without opinion*, 578 F.2d 1374 (3rd Cir.1 978). Especially in the light of Dean's status as a pro se complainant and the adequate clarity in his joinder motion, we conclude that the district court abused its discretion by denying Dean's motion to add the Chief of the Jefferson County Jail as a defendant.").[10]

---

[10]    In arguing that they have sufficiently pleaded the fictitious defendants, the Plaintiffs quote the unpublished case *Bowens v. Superintendent of Miami South Beach Police Department*, 557 F. App'x 857 (11h Cir. 2014) (per curiam), for the proposition "that a claim may be maintained against unnamed defendants where allegations in the complaint make clear the plaintiff could uncover the names through discovery." 557 F. App'x at 862 (citing *Dean*, 951 F.2d at 1215-16). As an unpublished case, *Bowens* is "not considered binding precedent, but [it] may be cited as persuasive authority." 11th Cir. R. 36-2. *See also Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 n.1 (11th Cir. 2015) (per curiam) ("Cases printed in the Federal Appendix are cited as persuasive authority."). However, an unpublished opinion matters only to the extent that a court " 'finds the rationale expressed in that opinion to be persuasive after an independent consideration of the legal issue." *United States v. Munoz*, -- F.4th --, No. 22-11574, 2024 WL 3682137, at *7 n.4 (11th Cir. Aug. 7, 2024) (quoting *Collado v. J. & G. Transp., Inc.*, 820 F.3d 1256, 1259 n.3 (11th Cir. 2016) (per curiam) (internal quotation marks omitted)).

    *Bowens* arguably oversimplified the holding of *Dean* in making the above-quoted statement, especially given the interpretation of *Dean* in *Richardson*, a published case. However, even *Bowens* specified that a complaint's allegations must "make clear the plaintiff could uncover the names of [unnamed defendants] through discovery." In *Bowens*, the *pro se* plaintiff filed a civil rights complaint alleging claims arising from an arrest by Miami South Beach Police Department officers while he was photographing another arrest as a freelance photojournalist. The *Bowens* panel held that the plaintiff's identification of certain defendants as " '[t]he Arresting Officer(s) of Miami South Beach Police Department,' when liberally construed along with the rest of [the plaintiff's] allegations," was sufficient to allow the claims to proceed against those unnamed individuals. 557 F. App'x at 862. In other words, the *Bowens* plaintiff tied his fictitious defendants to a specific incident underlying his claims, such that it was "clear" that their names would be revealed through discovery regarding those claims. Here, on the other hand, the Plaintiffs have not tied any of

### c. **Alabama "State Immunity"**

### 1. **The Board**

Next, the Board asserts that it is entitled to immunity on the Plaintiffs' state law claims in Counts III and V under Article I, § 14 of the Alabama Constitution of 1901—what Alabama courts have at times "referred to as '§ 14 immunity,' 'sovereign immunity,' or 'State-sovereign immunity,' " but which the Supreme Court of Alabama has recently favored calling "State immunity." *Ex parte Pinkard*, 373 So. 3d 192, 198-99 & n.3 (Ala. 2022). The undersigned agrees.

> Section 14, Ala. Const. 1901, provides "[t]hat the State of Alabama shall never be made a defendant in any court of law or equity." This section affords the State and its agencies an "absolute" immunity from suit in any court. *Ex parte Mobile County Dep't of Human Res.,* 815 So. 2d 527, 530 (Ala. 2001) (stating that Ala. Const.1901, § 14, confers on the State of Alabama and its agencies absolute immunity from suit in any court); *Ex parte Tuscaloosa County,* 796 So. 2d 1100, 1103 (Ala. 2000) ("Under Ala. Const. of 1901, § 14, the State of Alabama has absolute immunity from lawsuits. This absolute immunity extends to arms or agencies of the state...."). Indeed, this Court has described § 14 as an "almost invincible" "wall" of immunity. *Alabama State Docks v. Saxon,* 631 So. 2d 943, 946 (Ala. 1994). This "wall of immunity" is "nearly impregnable," *Patterson v. Gladwin Corp.,* 835 So. 2d 137, 142 (Ala. 2002), and bars "almost every conceivable type of suit." *Hutchinson v. Board of Trustees of Univ. of Ala.,* 288 Ala. 20, 23, 256 So. 2d 281, 283 (1971).

*Haley v. Barbour Cnty.*, 885 So. 2d 783, 788 (Ala. 2004).

The Alabama Supreme Court has held that "[f]or purposes of § 14 immunity, county boards of education are considered agencies of the State." *Ex parte Jackson Cnty. Bd. of Educ.*, 4 So. 3d 1099, 1102 (Ala. 2008) (citing *Louviere v. Mobile County*

---

their fictitious defendants to any specific incident underlying their claims, and it is at best speculative that discovery may reveal the names of additional defendants who may be liable.

*Bd. of Educ.*, 670 So. 2d 873, 877 (Ala. 1995)).[11] Thus, Alabama "county boards of education are immune from tort actions[,]" *Jackson County Board of Education*, 4 So. 3d at 1102, and from actions for breach of contract. *See Ex parte Hale Cnty. Bd. of Educ.*, 14 So. 3d 844, 846-49 (Ala. 2009) (overruling prior state precedent to hold that Alabama county board of education was entitled to State immunity on breach-of-contract claim); *Ex parte Jackson Cnty. Bd. of Educ.*, 164 So. 3d 532 (Ala. 2014) (reaffirming *Ex parte Hale County Board of Education* in holding that § 14 immunity barred breach-of-contract claim against county school board); *Ex parte Jefferson Cnty. Bd. of Educ.*, 348 So. 3d 397 (Ala. 2021) (same).

In arguing that the Board is not entitled to State immunity, the Plaintiffs cite to several "exceptions" to such immunity recognized in *Ex parte Carter*, 395 So. 2d 65 (Ala. 1980):

> There are four general categories of actions which…*Aland v. Graham*, 287 Ala. 226, 250 So. 2d 677 (1971),…stated do not come within the prohibition of s 14: (1) actions brought to compel State officials to perform their legal duties; (2) actions brought to enjoin State officials from enforcing an unconstitutional law; (3) actions to compel State officials to perform ministerial acts; and (4) actions brought under the Declaratory Judgments Act, Tit. 7, s 156, et seq., seeking construction of a statute and its application in a given situation. 287 Ala. at 229-230, 250 So. 2d 677. Other actions which are not prohibited by s 14 are: (5) valid inverse condemnation actions brought against State officials in their representative capacity; and (6) actions for injunction or damages

---

[11] *Accord Edwards v. Dothan City Sch.*, 82 F.4th 1306, 1313 (11th Cir. 2023) ("The State of Alabama generally enjoys absolute immunity from lawsuits under Article I, Section 14 of the Alabama Constitution. This immunity applies to arms or agencies of the state. *Ex parte Tuscaloosa Cnty.*, 796 So. 2d 1100, 1103 (Ala. 2000). According to Alabama law, boards of education are considered state agencies, thus providing immunity from suit. *See Ex parte Phenix City Bd. of Educ.*, 67 So. 3d 56, 60 (Ala. 2011).").

brought against State officials in their representative capacity and individually where it was alleged that they had acted fraudulently, in bad faith, beyond their authority or in a mistaken interpretation of law.

395 So. 2d at 68, *overruled on other grounds by Portersville Bay Oyster Co., LLC v. Blankenship*, 275 So. 3d 124 (Ala. 2018).

Since the Plaintiffs did not, the undersigned will note that the Alabama Supreme Court has since "restate[d] the sixth 'exception' to the bar of State immunity under § 14 as follows:"

> (6)(a) actions for injunction brought against State officials in their representative capacity where it is alleged that they had acted fraudulently, in bad faith, beyond their authority, or in a mistaken interpretation of law, and (b) actions for damages brought against State officials in their individual capacity where it is alleged that they had acted fraudulently, in bad faith, beyond their authority, or in a mistaken interpretation of law, subject to the limitation that the action not be, in effect, one against the State.

*Ex parte Moulton*, 116 So. 3d 1119, 1141 (Ala. 2013) (citations omitted).

The Plaintiffs specifically rely on the first, third, and sixth "exceptions." However, as the Alabama Supreme Court has observed, the plain language of *Carter* "restricts the sovereign-immunity exceptions, except for declaratory-judgment actions, to suits against *State officials.*" *Ex parte Ala. Dep't of Transp.*, 978 So. 2d 17, 23 (Ala. 2007) (emphasis added).[12] None of the "exceptions" on which the Plaintiffs rely apply to the Board itself.

---

[12] *See also id.* at 22-23 ("Because the immunity of the State is absolute, this Court has usually provided that any exceptions to that immunity extend only to suits naming the proper *State official* in his or her representative capacity…[The plaintiff] has named as a party only the State agency; it has not named any State official. The

In arguing that State immunity does not bar Turner-Pugh and Ingram's breach-of-contract claims against the Board, the Plaintiffs rely on footnote 22 of *Health Care Authority for Baptist Health v. Davis*, 158 So. 3d 397 (Ala. 2013), which states:

> One exception [to § 14 immunity] is actions arising from the State's legal contractual obligations. See, e.g., *State of Alabama Highway Dep't v. Milton Constr. Co.*, 586 So. 2d 872, 875 (Ala. 1991) ("Once the Highway Department has legally contracted under state law for goods or services and accepts such goods or services, the Highway Department also becomes legally obligated to pay for the goods or services accepted in accordance with the terms of the contract. *It follows that this obligation is not subject to the doctrine of sovereign immunity and is enforceable in the courts.*").

158 So. 3d at 422 n.22.

As the Plaintiffs' brief <u>fails</u> to note, however, footnote 22 of *Health Care Authority* is not part of the majority opinion, but rather is from the separate opinion of a single justice who concurred only in the result. Moreover, while acknowledging that the *Milton Construction* case contains "language suggesting that the exceptions to sovereign immunity apply to State agencies[,]" the Alabama Supreme Court has disavowed any reading of *Milton Construction* as recognizing "a right to sue a State agency *in the agency's own right* on a breach-of-contract theory…" *Ala. Dep't of Transp.*, 978 So. 2d at 23 (emphasis added). As the court explained, *Milton Construction* relied on *Carter*—which, as has already been noted, "restricts the

---

absolute immunity of the State agency from suit bars actions for relief by mandamus or injunction…Each of the cases [the plaintiff] cites…is a case in which a plaintiff sought the writ of mandamus directing a *State official*, not the State agency itself, to act." (emphasis added)).

sovereign-immunity exceptions, except for declaratory-judgment actions, to suits against State officials"—and "the plaintiff [in *Milton Construction*] had named the director of the Highway Department, in his official capacity, as a party to the action, along with the Highway Department." *Id.*[13]

Because the Board is an Alabama state agency entitled to State immunity, the state law claims in Counts III and V are due to be dismissed as to the Board.

## 2. Shehan, in His Official Capacity

Shehan argues that he is also entitled to State immunity on the Plaintiffs' state law claims asserted against him in his official capacity. Shehan has failed to show such entitlement at this stage of the case.

"Section 14 applies not only to suits against the State and its agencies, but also to 'official-capacity' suits against State officers, employees, and agents." *Pinkard*, 373 So. 3d at 199 (citing Ala. Code § 36-1-12(b)). "That is because a suit against a State agent in his 'official capacity' is equivalent to a suit against the office itself." *Id.* (citing *Haley*, 885 So. 2d at 788). As discussed above, certain categories of actions against

---

[13] The breach-of-contract claims at issue are essentially claims for retrospective relief and backpay from the Board based on breach of an employment contract, which are barred by State immunity. *See Latham v. Dep't of Corr.*, 927 So. 2d 815, 821 (Ala. 2005) ("In general, the State is immune from any lawsuit that would directly affect a contract or property right of the State or result in the plaintiff's recovery of money from the State. *See* [*Alabama Agric. & Mech. Univ. v.*] *Jones,* 895 So. 2d [867], 873[ (Ala. 2004)]. A claim for backpay is a claim for compensatory damages. 895 So. 2d at 875–76 (holding that the doctrine of sovereign immunity bars claims for retrospective relief and backpay against a state university based on a breach of an employment contract); *Vaughan v. Sibley,* 709 So.2d 482, 486 (Ala. Civ. App.1997). The doctrine of sovereign immunity thus bars an action seeking backpay. *Jones,* 895 So.2d at 876; *Vaughan,* 709 So.2d at 486.").

State officials are "exempt" from State immunity. However, "[t]he touchstone is not whether a claim can be framed as falling within one of [those] categories — it is whether the claim is against the State, that is, whether a result favorable to the plaintiff would directly affect a contract or property right of the State." *Ex parte Cooper*, -- So. 3d --, No. SC-2023-0056, 2023 WL 5492465, at *4 (Ala. Aug. 25, 2023) (citing *Pinkard*). Those categories "are simply illustrations of claims for which State immunity generally does not apply because the action is — both in form and in substance — against an individual person rather than 'the State' as such." *Id. Accord Moulton*, 116 So. 3d at 1132 (The six *Carter* categories "are sometimes referred to as 'exceptions' to § 14; however, in actuality these actions are simply not considered to be actions against the State for § 14 purposes. This Court has qualified those exceptions, noting that an action is one against the State when a favorable result for the plaintiff would directly affect a contract or property right of the State, or would result in the plaintiff's recovery of money from the State." (citations and quotations omitted)).

In Alabama state courts, State immunity is "not an affirmative defense, but a jurisdictional bar" which "may not be waived[,]" *Alabama Dep't of Corr. v. Montgomery Cnty. Comm'n*, 11 So. 3d 189, 191-92 (Ala. 2008) (per curiam) (quotations omitted), " strip[ping] [state] courts of all power to adjudicate claims against the State, even if the State has not raised its immunity as a defense." *Pinkard*, 373 So. 3d at 198–99. However, in federal courts, state-law immunities from suit are not jurisdictional matters, but are simply defenses that the proponent is required to raise

and prove. This is because a "defense rooted in state law cannot define the jurisdiction of the federal courts, which derives from the Constitution and acts of Congress." *Green v. Graham*, 906 F.3d 955, 964 (11th Cir. 2018) (declining to consider a belatedly-raised defense of State immunity "under ordinary forfeiture principles").

"[A] plaintiff is not required to negate an affirmative defense in its complaint[,]" *Wainberg v. Mellichamp*, 93 F.4th 1221, 1224 (11th Cir. 2024) (per curiam) (quotation omitted), so "[g]enerally, the existence of an affirmative defense will not support a motion to dismiss. Nevertheless, a complaint may be dismissed under Rule 12(b)(6) when its own allegations indicate the existence of an affirmative defense, so long as the defense clearly appears on the face of the complaint." *Quiller v. Barclays Am./Credit, Inc.*, 727 F.2d 1067, 1069 (11th Cir. 1984), *on reh'g*, 764 F.2d 1400 (11th Cir. 1985) (en banc) (per curiam) (affirming and reinstating the panel opinion). *Accord Isaiah v. JPMorgan Chase Bank*, 960 F.3d 1296, 1304 (11th Cir. 2020) ("A complaint need not anticipate and negate affirmative defenses and should not ordinarily be dismissed based on an affirmative defense unless the defense is apparent on the face of the complaint.").[14]

In the Defendants' opening brief supporting their motion, Shehan cites only to general principles of Alabama law regarding State immunity, without discussing any of the above-mentioned "exceptions." In response, the Plaintiffs point out that the first amended complaint invokes one of the "exceptions" by alleging that Shehan

---

[14] For the reasons explained above, the undersigned finds that it "clearly appears on the face of the complaint" that the Board is entitled to State immunity on the Plaintiffs' state law claims.

acted "negligently, willfully, maliciously, fraudulently, in bad faith, beyond their authority, and/or under a mistaken interpretation of law." (Doc. 18, PageID.155).[15] In the Defendants' reply brief, Shehan does not address the Plaintiffs' invocation of that State immunity "exception," nor does he otherwise attempt to show how either of the official-capacity state law claims against him is really a "claim against the State, that is, whether a result favorable to the plaintiff would directly affect a contract or property right of the State." *Cooper*, 2023 WL 5492465, at *4. Accordingly, Shehan has failed to show that he is "clearly" entitled to State immunity in his official capacity "on the face of the complaint."

### d. Claims against Shehan

Next, Shehan argues that the official-capacity claims against him are due to be dismissed as duplicative of those asserted against the Board, under the principle that "[c]laims against individuals in their official capacities 'generally represent only another way of pleading an action against an entity of which an officer is an agent,' and are 'in all respects other than name, to be treated as a suit against the entity.' " *Rodemaker v. City of Valdosta Bd. of Educ.*, -- F.4th --, No. 22-13300, 2024 WL

---

[15] The majority of the Plaintiffs' briefing on this issue simply consists of block quotes of case law with little to no attempt show how it applies to the facts of this case (*see* Doc. 26 § 3, PageID.195-197), which is generally insufficient to raise a matter. *Cf., e.g.*, *Cain v. Soc. Sec. Admin., Comm'r*, No. 22-10460, 2022 WL 17076735, at *2 (11th Cir. Nov. 18, 2022) (per curiam) (unpublished) (holding that an appellant had forfeited an issue when her "counseled brief consist[ed] of page-long block quotes from cases…with no discussion about how the cited cases [we]re analogous to [her] circumstances or otherwise support[ed] her claim"). The Plaintiffs also point out that Shehan could still be liable in his individual capacity, but that argument is not germane to the issue at hand, as the Defendants have not moved to dismiss the individual-capacity claims against Shehan based on any purported immunity.

3643133, at *7 (11th Cir. Aug. 5, 2024) (quoting *Kentucky v. Graham*, 473 U.S. 159, 165-66 , 105 S. Ct. 3099, 87 L. Ed. 2d 114 (1985) (quotation marks omitted)). He also argues is not liable in his individual capacity for the Plaintiffs' Title VII, Title IX, or Equal Pay Act claims.

As has already been explained, the state law claims against the Board are due to be dismissed under State immunity, while those against Shehan in his official capacity are not. Should the Court ultimately adopt that finding, those claims would no longer be pending against the Board, and the official-capacity state law claims against Shehan would therefore not be duplicative.

As for the federal claims, "[i]ndividual capacity suits under Title VII are…inappropriate[,]" because "[t]he relief granted under Title VII is against the *employer*, not individual employees whose actions would constitute a violation of the Act." *Busby v. City of Orlando*, 931 F.2d 764, 772 (11th Cir. 1991) (per curiam). Thus, "the proper method for a plaintiff to recover under Title VII is by suing the employer, *either* by naming the supervisory employees as agents of the employer *or* by naming the employer directly." *Id.* (emphasis added). Likewise, "Title IX does not allow claims against individual school officials; only funding recipients can be held liable for Title IX violations." *Williams v. Bd. of Regents of Univ. Sys. of Ga.*, 477 F.3d 1282, 1300 (11th Cir. 2007) (citing *Hartley v. Parnell*, 193 F.3d 1263, 1270 (11th Cir. 1999)). And while he may still be considered an "employer" in his official capacity, "a public official sued in his individual capacity is not an 'employer' subject to individual liability

under the" Fair Labor Standards Act (and therefore, the Equal Pay Act).[16] *Wascura v. Carver*, 169 F.3d 683, 686 (11th Cir. 1999) (citing *Welch v. Laney*, 57 F.3d 1004, 1011 (11th Cir. 1995)). *Accord Austin v. Glynn Cnty., Georgia*, 80 F.4th 1342, 1346 (11th Cir. 2023) (holding that *Welch* and *Wascura* are still good law regarding individual-capacity FLSA claims against public officials), *cert. denied sub nom. Austin v. Glynn Cnty.*, 144 S. Ct. 1060 (2024).[17]

Therefore, Shehan cannot be held individually liable under Title VII, Title IX, or the Equal Pay Act, and those claims are due to be dismissed against him in his individual capacity. Additionally, the Defendants are correct that the official-capacity Title VII, Title IX, and Equal Pay Act claims against Shehan are duplicative of those same claims asserted directly against the Board as the Plaintiffs' employer/Title IX funding recipient. However, that does not justify dismissal under Rule 12(b)(6)— duplicative claims do not fail "to state a claim upon which relief can be granted." *Cf.* Fed. R. Civ. P. 8(d)(2) ("A party may set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones. If a party makes alternative statements, the pleading is sufficient if any one of them

---

[16] "[T]he Equal Pay Act of 1963, 77 Stat. 56, s 3, 29 U.S.C. s 206(d)(1),…added to…the Fair Labor Standards Act of 1938 the principle of equal pay for equal work regardless of sex." *Corning Glass Works v. Brennan*, 417 U.S. 188, 190, 94 S. Ct. 2223, 41 L. Ed. 2d 1 (1974). As such, "[t]he Equal Pay Act is simply an extension of the FLSA and incorporates the FLSA's definition of 'employer.' " *Wascura v. Carver*, 169 F.3d 683, 686 (11th Cir. 1999) (citing *Corning Glass Works*, 417 U.S. at 190).

[17] Unlike the other federal claims in the first amended complaint, the ADA claim is expressly asserted only against the Board. Nevertheless, it is noted that, as with Title VII, individual employees are not liable for employment discrimination under the ADA. *See Albra v. Advan, Inc.*, 490 F.3d 826, 829-30 (11th Cir. 2007) (per curiam).

is sufficient."). Rather, the appropriate vehicle for dismissing these duplicative claims is Federal Rule of Civil Procedure 12(f), which permits a court to "strike from a pleading…any redundant…matter[,]" either on its own or on motion of a party. Accordingly, to the extent it seeks dismissal of the official-capacity Title VII, Title IX, and Equal Pay Act claims against Shehan, the undersigned will recommend the Court treat it as a motion to strike those claims under Rule 12(f), and that such relief be granted, leaving the Board as the only named Defendant on Counts I, II, and VIII.

### e. Demand for Attorneys' Fees

The Defendants also assert that the Court should dismiss the Plaintiffs' demands for attorneys' fees as part of their prayers for relief on their state law claims. Per the Defendants, the Plaintiffs have failed to show entitlement to such relief under the "American Rule"[18] because they do not "allege a contractual or statutory right to an award of attorney's fees[, or] an equitable exception which would allow a fee award against the Board or Superintendent Shehan." (Doc. 27, PageID.213).[19] However, the

---

[18] "In the American legal system, each party is traditionally responsible for its own attorney's fees. This principle is known as the American Rule. There are three exceptions to the American Rule: (1) when a statute grants courts the authority to direct the losing party to pay attorney's fees; (2) when the parties agree in a contract that one party will pay attorney's fees; and (3) when a court orders one party to pay attorney's fees for acting in bad faith." *In re Home Depot Inc.*, 931 F.3d 1065, 1078 (11th Cir. 2019) (citations omitted).

[19] The Plaintiffs fail to directly address the Defendants' argument on this issue in their response, instead pointing to fee-shifting statutes related to their federal claims. However, the Defendants have expressly limited their attorneys'-fees argument to only the state law claims.

undersigned disagrees that the Plaintiffs are required to include any such allegations in their complaint in order to maintain their demand.

Federal Rule of Civil Procedure 8(a)(2) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief[,]" which the Supreme Court has interpreted to mean a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). On the other hand, Rule 8(a)(3) only requires "a demand for the relief sought, which may include relief in the alternative or different types of relief." Unlike Rule 8(a)(2), which is applicable to "claims," Rule 8(a)(3) does not require "a short and plain statement" showing entitlement to the damages demanded, and the Eleventh Circuit has held that Rule 8(a)(3)'s standard "is not arduous—any concise statement identifying the remedies and the parties against whom relief is sought will be sufficient." *Goldsmith v. City of Atmore*, 996 F.2d 1155, 1161 (11th Cir. 1993) (quotation omitted) (analyzing prior version of Rule 8(a)(3) which stated that a complaint must contain "a demand for judgment for the relief the pleader seeks"). The Plaintiffs' attorneys'-fee demands satisfy that standard. Accordingly, the motion to dismiss is due to be denied as to the Plaintiffs' attorneys'-fees demands in Counts III and V.

### f. Punitive Damages

The Plaintiffs have demanded punitive damages on all claims. The Defendants

broadly assert that "[p]unitive damages are not allowed against the Board or Superintendent Shehan in his official capacity." (Doc. 22, PageID.184). In support of this assertion, the Defendants' opening brief cites, without pinpoint citation, to a single district court case, *Garrett v. Clarke County Board of Education*, 857 F. Supp. 949 (S.D. Ala. 1994) (Hand, J.),[20] as well as an Alabama statute, § 6-11-26 of the Code of Alabama.

At the outset, the undersigned notes that Rule 12(b)(6) is not the proper vehicle to challenge the propriety of damages demands in a complaint. By its terms, Rule 12(b)(6) applies to claims for relief, and as explained above, Rule 8(a) treats claims for relief as distinct from demands for relief. Rather, a challenge to the propriety of a damages demand is more appropriately sought through Rule 12(f), which permits a court to "strike from a pleading…any…immaterial, impertinent, or scandalous matter[,]" either on its own or on timely motion of a party. Accordingly, to the extent the Defendants challenge certain demands for damages in the first amended complaint, the undersigned treats the present motion as one to strike those demands under Rule 12(f).

*Garrett* does support the proposition that "[i]n no event…may the complaining party recover punitive damages from a governmental entity" under Title VII. 857 F.

---

[20] "A decision of a federal district court judge is not binding precedent in either a different judicial district, the same judicial district, or even upon the same judge in a different case." *Camreta v. Greene*, 563 U.S. 692, 709 n.7, 131 S. Ct. 2020, 179 L. Ed. 2d 1118 (2011) (quotation omitted)). *Accord, e.g.*, *Fox v. Acadia State Bank*, 937 F.2d 1566, 1570 (11th Cir. 1991) (per curiam) ("A district court is not bound by another district court's decision, or even an opinion by another judge of the same district court…").

Supp. At 953 (citing 42 U.S.C. § 1981a(b)(1)). *Accord Oden v. Oktibbeha Cnty., Miss.*, 246 F.3d 458, 465–66 (5th Cir. 2001) (As amended by the Civil Rights Act of 1991, Title VII generally allows for recovery of punitive damages, but "precludes plaintiffs from recovering punitive damages against governments, government agencies, and political subdivisions." (citing 42 U.S.C. § 1981a(b)(1)). And § 6-11-26 does support the proposition that punitive damages are unavailable on the state law claims against the Board and against Shehan in his official capacity. *See* Ala. Code § 6-11-26 (subject to inapplicable exceptions, "[p]unitive damages may not be awarded against the State of Alabama or any county or municipality thereof, or any agency thereof…"); *Ex parte Haralson*, 871 So. 2d 802, 807 (Ala. 2003) (Section 6-11-26 barred punitive damages against state officer in his official capacity). Accordingly, those demands are due to be stricken as "immaterial," or possibly "impertinent." However, *Garrett* did not concern claims under Title IX, the ADA, or the Equal Pay Act, and the Defendants have cited no other authority to indicate that punitive damages are unavailable under those federal statutes.

Accordingly, the Defendants' motion to strike certain damages demands is due to be granted (1) as to the punitive-damages demand in Count I (Title VII) in its entirety,[21] and (2) as to the punitive-damages demands in Counts III (Defamation) and V (Breach of Contract) to the extent they are asserted against the Board and

---

[21] As explained above, since Title VII does not provide for liability against individual employees, those claims may only be asserted against the Board or against Shehan in his supervisory capacity, either way making them claims against a government agency.

against Shehan in his official capacity, and is due to be denied as to all other punitive damages demands.[22]

### g. "Shotgun" Complaint

Finally, the Defendants have also moved to dismiss the first amended complaint in its entirety as an impermissible "shotgun" pleading.

"Complaints that violate either Rule 8(a)(2) or Rule 10(b)[23], or both, are often disparagingly referred to as 'shotgun pleadings.' " *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1320 (11th Cir. 2015). The Eleventh Circuit has

> identified four rough types or categories of shotgun pleadings. The most common type—by a long shot—is a complaint containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint. The next most common type…is a complaint that does not commit the mortal sin of re-alleging all preceding counts but is guilty of the venial sin of being replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action. The third type of shotgun pleading is one that commits the sin of not separating into a different count each cause of action or claim for relief. Fourth, and finally, there is the relatively rare sin of asserting multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against. The unifying characteristic of all types of shotgun

---

[22] Shehan has not moved to dismiss either of the state law claims against him in his individual capacity. If the Court agrees that the Board is entitled to State immunity on those claims, *see supra*, the propriety of the punitive damages demands against it in those counts will be a moot point.

[23] "A party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances…If doing so would promote clarity, each claim founded on a separate transaction or occurrence—and each defense other than a denial—must be stated in a separate count or defense." Fed. R. Civ. P. 10(b).

> pleadings is that they fail to one degree or another, and in one way or
> another, to give the defendants adequate notice of the claims against
> them and the grounds upon which each claim rests.

*Id.* at 1321–23 (footnotes omitted). The Defendants claim that the first amended complaint falls into the first, third, and fourth categories.

The undersigned disagrees that it falls into the third category of shotgun pleadings, as it adequately separates each cause of action or claim for relief into discrete counts, and each count names the Plaintiff(s) asserting that claim or cause of action. While it might arguably fall within the fourth category as currently constituted, any prejudice caused by that defect will be ameliorated should the Court adopt the foregoing recommendations—the dismissal of the School System and the fictitious defendants for the reasons explained above will leave only the Board and Shehan as defendants in this action, and the proper parties to each count will have been clarified. However, it indisputably falls into the first category of shotgun pleading, as "each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint."

Nevertheless, shotgun complaints are not invariably subject to dismissal. Rather, a "dismissal under Rules 8(a)(2) and 10(b) is appropriate where 'it is *virtually impossible* to know which allegations of fact are intended to support which claim(s) for relief.' " *Id.* at 1325 (quoting *Anderson v. Dist. Bd. of Trs. of Cent. Fla. Cmty. Coll.*, 77 F.3d 364, 367 (11th Cir. 1996) (emphasis added)). In spite of the serial-incorporation issue, the "Facts" allegations are not "replete with conclusory, vague,

[or] immaterial facts[,]" and are for the most part clear as to which parties are responsible for which acts or omissions. Moreover, each count describes the kinds of acts or omissions underlying each claim, even if they do not precisely identify each numbered paragraph containing relevant allegations.[24] Thus, "this is not a situation where a failure to more precisely parcel out and identify the facts relevant to each claim [has] materially increased the burden of understanding the factual allegations underlying each count." *Id.* at 1324. Accordingly, dismissal of the first amended complaint for being a shotgun pleading is not warranted.

## IV.    *Conclusion*

In accordance with the foregoing analysis, the undersigned **RECOMMENDS** as follows:

1. that the Plaintiffs' response brief (Doc. 26) be treated as a Rule 41(a)(1)(A)(i) notice of voluntary dismissal of all claims against the School System, effective

---

[24] For instance, Count I (Title VII discrimination/retaliation), asserted by all Plaintiffs, specifies that Salter was discriminated against on the basis of sex "by terminating her contract and dismissing her from employment in order to benefit male coworkers[;]" that Turner-Pugh was discriminated/retaliated against by being publicly accused of financial mismanagement, being treated unfavorably compared to other coworkers, and by being placed on administrative leave; and that Ingram and Turner were retaliated against for their support of Turner-Pugh by having their contracts terminated and being accused of nepotism and misappropriation. (*See* Doc. 18, PageID.151). Count II, asserted only by Turner-Pugh, specifies that the acts underlying that claim are Turner-Pugh refusing Shehan's unwanted romantic advances, the Board's failure to act on such "unprofessional behavior," and Shehan's forbidding her from addressing male coaches at her school. (*Id.*, PageID.153). Count III (Defamation) identifies the relevant false statements as the "unpublished, undiscussed, and unofficial reasons why [the Plaintiffs] were placed on administrative leave or terminated[,]" including claims of embezzlement/misappropriation of funds. (*Id.*, PageID.154).

upon its filing; and

2. that the Defendants' Rule 12(b)(6) motion to dismiss the first amended complaint (Doc. 21) be **GRANTED in part**, **DENIED in part**, and found **MOOT in part**, as follows:

    a. that it be found **MOOT** as to the School System;

    b. that it be **GRANTED** as to Fictitious Defendants A-Z, such that those parties are **DISMISSED**, **without prejudice** to the Plaintiffs' ability to timely join additional named defendants, or unnamed defendants who can be identified with the requisite specificity for fictitious-party pleading, as described above;

    c. that it be **GRANTED** as to the state law claims against the Board in Counts III (Defamation) and V (Breach of Contract) on the basis of Alabama State immunity, such that those claims are **DISMISSED without prejudice**;[25]

    d. that it be **GRANTED** as to the claims against Shehan in his individual capacity in Counts I (Title VII), II (Title IX), and VIII (Equal Pay Act), such that those claims are **DISMISSED with prejudice**;

---

[25] While, as explained, State immunity is not jurisdictional in this Court, it is in Alabama state court, and it would seem anomalous to dismiss the claims in this Court on such basis with prejudice, when the same claims would be dismissed without prejudice in Alabama state court. As such, the undersigned has recommended that dismissal based on State immunity be without prejudice. *See* Fed. R. Civ. P. 41(b) ("Unless the dismissal order states otherwise, a dismissal under this subdivision (b) and any dismissal not under this rule—except one for lack of jurisdiction, improper venue, or failure to join a party under Rule 19—operates as an adjudication on the merits.").

e. that it be partially construed as a Rule 12(f) motion to strike, and so construed, that it be **GRANTED** as to the official-capacity claims against Shehan in Counts I, II, and VIII, such that they are **STRICKEN** as redundant; and that it be **GRANTED** as to the demand for punitive damages made in Count I its entirety, and as to the punitive damages demands in Counts III and V to the extent they are asserted against the Board and against Shehan in his official capacity, such that they are **STRICKEN** as immaterial and/or impertinent; and

f. that the motion be otherwise **DENIED**.

## <u>NOTICE OF RIGHT TO FILE OBJECTIONS</u>

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within 14 days of the date of service of this document, file specific written objections with the Clerk of this Court. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); S.D. Ala. GenLR 72(c). The parties should note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice." 11th Cir. R. 3-1. In order to be specific, an

objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

**DONE** this the **16th** day of **August 2024**.

*/s/ Katherine P. Nelson*
**KATHERINE P. NELSON**
**UNITED STATES MAGISTRATE JUDGE**