# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| **BARBARIETTA TURNER-PUGH,** *et al.*, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | CIV. ACT. NO. 1:23-cv-294-TFM-N |
| ) | |
| **MONROE COUNTY BOARD** ) | |
| **OF EDUCATION,** *et al.*, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is the Motion for Summary Judgment (Doc. 86, filed July 16, 2025) in which Defendants Monroe County Board of Education ("MCBOE") and Gregory Shehan ("Shehan") petition the Court to enter summary judgment in their favor and against Plaintiff Barbarietta Turner-Pugh ("Turner-Pugh" or "Plaintiff") for her three Federal claims against the MCBOE – Title VII discrimination and retaliation, Title IX discrimination, and a violation of the Equal Pay Act ("EPA"), and three State law claims against Shehan in his individual capacity – defamation of character, outrage, and breach of contract. Doc. 80 at 13-20. Having considered the motion for summary judgment, response, reply, and relevant law, the Court finds the motion is due to be **GRANTED**.

### I.   JURISDICTION AND VENUE

The Court has subject matter jurisdiction over the claims in this action pursuant to 28 U.S.C. § 1331 (federal question). The Court has personal jurisdiction over the claims in this action because the events that gave rise to this action occurred within this district. *See Consol. Dev. Corp. v. Sherritt, Inc.*, 216 F.3d 1286, 1291-92 (11th Cir. 2000) ("Specific jurisdiction arises out of a party's activities in the forum that are related to the cause of action alleged in the complaint ....

General personal jurisdiction, on the other hand, arises from a defendant's contacts with the forum that are unrelated to the cause of action being litigated. The due process requirements for general personal jurisdiction are more stringent than for specific personal jurisdiction, and require a showing of continuous and systematic general business contacts between the defendant and the forum state."). Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events that gave rise to the claims in this matter occurred in this judicial district.

No party disputes or debates the Court's jurisdiction or venue, and the Court finds adequate support for both.

## II.     BACKGROUND[1]

Turner-Pugh was employed as the Director of Student Services with MCBOE from July 2014 to February 7, 2025. Docs. 87 at 13; 103 at 2. In her position, she was also assigned other duties including "counselor supervisor, system accountability coordinator, and system athletic director." Doc. 88-1 at 4. Additionally, MCBOE contracted with the Alabama State Department of Education ("ALSDE") through a Memorandum of Understanding ("MOU") for Turner-Pugh to serve as a SAFE (Securing Alabama's Facilities of Education) Council Regional Administrator from 2020 to December 2022. Doc. 88-15 at 4. In October 2020, with MCBOE's approval, Turner-Pugh also served as the Program Director for a 21st Century grant for after school and summer programs and

---

[1] At this stage of the proceedings, this court takes the facts alleged by Turner-Pugh as true and construes them in the light most favorable to her. *Stewart v. Booker T. Washington Ins.*, 232 F.3d 844, 848 (11th Cir.2000) (citations omitted) ("In assessing whether there is any 'genuine issue' for trial, the court 'must view all the evidence and all factual inferences reasonably drawn from the evidence in the light most favorable to the nonmoving party,' " ... and 'resolve all reasonable doubts about the facts in favor of the non-movant.' ... "Moreover, the court must avoid weighing conflicting evidence or making credibility determinations...."). Thus, the facts set forth herein are drafted assuming the allegations presented by Turner-Pugh are true.

received hourly compensation for her work through the ALSDE. *Id.* at 4-5. Turner-Pugh was MCBOE's highest paid employee. *Id.* at 5.

Turner-Pugh alleges that on multiple occasions, then-superintendent Shehan sexually harassed her as recent as October 2022. Docs. 99 at 256; 103 at 2. Turner-Pugh alleges that she reported the sexual harassment to Marty Hanks (then human resources director, now superintendent, for MCBOE) (Doc. 99 at 396, 399) and MCBOE members Kenny Smith and her mother Barbara Turner (*Id.* at 408). Turner-Pugh admits that she never made a formal complaint pursuant to the policies in place at the time Turner-Smith alleges that she reported Shehan's inappropriate behavior. *Id.* at 407.

On September 28, 2022, Shehan, MCBOE members (except for Turner Pugh's mother Barbara Turner), and the ALSDE via State Superintendent Dr. Mackey received an anonymous package with a letter alleging that Turner Pugh misappropriated funds and pictures. Doc. 87 at 15. Shehan and the ALSDE both conducted investigations following receipt of the anonymous package. *Id.* The ALSDE informed Shehan via email that it had suspended MCBOE's 21st Century program on November 10, 2022, "because of several concerns including purchasing of items that aren't allowable, teachers being over paid, failing to submit attendance reports, and not having appropriate documentation for all purchases." Doc. 88-15 at 23. Shehan placed Turner-Pugh on paid administrative leave later that same day. Doc. 87 at 16. "State Superintendent Mackey notified Shehan that the ALSDE terminated the contract related to Turner Pugh's service as a SAFE Council Regional Director on December 7, 2022." *Id.* at 17. On December 19, 2024, Shehan notified Turner-Pugh that he would recommend the termination of her employment to MCBOE. Doc. 87 at 17. On February 7, 2025, MCBOE held a hearing on the recommendation and then voted to terminate Turner-Pugh's employment.

Turner-Pugh and her co-plaintiffs filed suit on August 1, 2023. Doc. 1. Turner-Pugh brought six claims: Federal claims against the MCBOE – Title VII discrimination and retaliation, Title IX discrimination, and a violation of the Equal Pay Act ("EPA"), and three State law claims

Page 3 of 16

against Shehan in his individual capacity – defamation of character, outrage, and breach of contract. Doc. 80 at 13-20. On July 16, 2025, the Defendants filed a motion for summary judgment, arguing that Turner-Pugh has failed to state show a prima facie case of discrimination or EPA violations. The motion has been fully briefed and is ripe for decision.

### III. STANDARD OF REVIEW

A party in a lawsuit may move a court to enter summary judgment before trial. Fed. R. Civ. P. 56(a), (b). Summary judgment is appropriate when the moving party establishes there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see also Greenberg v. BellSouth Telecomms., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) ("Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine [dispute] as to any material fact and that the moving party is entitled to judgment as a matter of law.'"). "[T]he substantive law will identify which facts are material." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see also Ritchey v. S. Nuclear Operating Co.,* 423 F. App'x 955 (11th Cir. 2011) (quoting *Anderson*, 477 U.S. at 248).[2] At the summary judgment juncture, the court does not "weigh the evidence and determine the truth of the matter," but solely "determine[s] whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. Only disputes about the material facts will preclude the granting of summary judgment. *Id*.

The movant bears the initial burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A party must support its assertion that there is no genuine issue of material fact by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials" or by "showing that the materials cited do not establish the absence or presence

of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). The admissibility of evidence is subject to the same standards and rules that govern admissibility of evidence at trial. *Clemons v. Dougherty County*, 684 F.2d 1365, 1369 n.5 (11th Cir. 1982) (citing *Pan-Islamic Trade Corp. v. Exxon Corp.*, 632 F.2d 539, 556 (5th Cir. 1980)).

Once the movant meets its burden under Fed. R. Civ. P. 56, the non-movant must go beyond the pleadings and designate specific facts showing there is a genuine issue for trial. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). "A genuine issue of material fact exists when 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Moore ex rel. Moore v. Reese*, 637 F.3d 1220, 1232 (11th Cir. 2011) (quoting *Anderson*, 477 U.S. at 248). The court must view the facts and draw all reasonable inferences in favor of the non-moving party. *Id*. (citing *Rosario v. Am. Corrective Counseling Servs., Inc.*, 506 F.3d 1039, 1043 (11th Cir. 2007)); *Greenberg*, 498 F.3d at 1265 ("We view the evidence and all factual inferences therefrom in the light most favorable to the party opposing the motion."). However, to avoid summary judgment, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586 (citations omitted). Conclusory assertions, unsupported by specific facts, that are presented in affidavits opposing the motion for summary judgment are likewise insufficient to defeat a proper motion for summary judgment. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990). "Speculation does not create a *genuine* issue of fact." *Cordoba v. Dillard's, Inc.*, 419 F.3d 1169, 1181 (11th Cir. 2005) (citation omitted). If the evidence is merely colorable or is not significantly probative, summary judgment may be granted. *See Anderson*, 477 U.S. at 249-50 (emphasis in original) (citations omitted). In short, summary judgment is proper after adequate

time for discovery and upon motion against a party who fails to make a showing that is sufficient to establish the existence of an element that is essential to that party's case. *Celotex*, 477 U.S. at 322.

Finally, Fed. R. Civ. P. 56(e) also provides that "[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may: (1) give an opportunity to properly support or address the fact; (2) consider the fact undisputed for purposes of the motion; (3) grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it; or (4) issue any other appropriate order." Fed. R. Civ. P. 56(e).

## IV.     DISCUSSION AND ANALYSIS

### A.     Title VII Discrimination/Retaliation

In the Third Amended Complaint, Turner-Pugh alleges that MCBOE violated her rights under Title VII when it terminated her employment on Shehan's recommendation "in retaliation for her protected speech in reporting and refusing his repeated sexual advances and harassment and filing the above styled action." Doc. 80 at 14. Turner-Pugh also alleges that the decision to terminate her employment came immediately after a proposed pay raise for Shehan was tabled at an MCBOE board meeting.

MCBOE first disputes that "Turner Pugh can meet her prima facie burden of sex or race discrimination because Turner Pugh cannot show (a) an adverse employment action, or (b) that the Board treated a similarly situated male or white employee more favorably. Turner Pugh has not identified a comparator." Doc. 87 at 22.

MCBOE first argues that Turner-Pugh cannot show an adverse employment action. It is undisputed that MCBOE voted to terminate Turner-Pugh's employment in February 2025. Docs.

87 at 17; 103 at 3. Turner-Pugh has appealed MCBOE's termination decision and a hearing was set to be held on August 13, 2025 before an Alabama Administrative Law Judge. Doc. 87 at 18. Neither party had provided notice to the court of a final action has been taken on Turner-Pugh's appeal. Accordingly, MCBOE argues that "Turner Pugh has State law remedies available to her to appeal the Board's decision to terminate her employment and could potentially be reinstated. Ala. Code §16-24C-6(e-f). Thus, Turner Pugh's claim against the Board is not ripe for review by this Court." Doc. 87 at 23.

To establish a prima facie case of either discrimination or retaliation in violation of Title VII, a plaintiff must show she suffered an adverse employment action. *Compare Stavropoulos v. Firestone*, 361 F.3d 610, 616-17 (11th Cir. 2004) (*citing Bass v. Bd. of Cty. Comm'rs*, 256 F.3d 1095, 1117 (11th Cir. 2001)) ("To establish a prima facie case of retaliation, a plaintiff must show that (1) she engaged in protected activity, (2) she suffered an adverse employment action, and (3) there was a causal link between the protected activity and the adverse employment action."), *with Rice-Lamar v. City of Ft. Lauderdale*, 232 F.3d 836, 842-43 (11th Cir. 2000) (*citing Holifield v. Reno*, 115 F.3d 1555, 1561-62 (11th Cir. 1997)) ("[A] plaintiff can establish a prima facie case that she was discriminated against in violation of Title VII by showing: (1) she is a member of a protected class; (2) she was subjected to adverse employment action; (3) her employer treated similarly situated employees who are not members of the plaintiff's class more favorably; and (4) she was qualified for the job or job benefit at issue.").

"[T]o prove adverse employment action in a case under Title VII's anti-discrimination clause, an employee must show a serious and material change in the terms, conditions, or privileges of employment." *Davis v. Town of Lake Park*, 245 F.3d 1232, 1240 (11th Cir. 2001) (emphasis in original). "Moreover, the employee's subjective view of the significance and adversity of the

employer's action is not controlling; the employment action must be materially adverse as viewed by a reasonable person in the circumstances." *Id*. (*citing Doe v. Dekalb Cty. Sch. Dist.*, 145 F.3d 1441, 1453 (11th Cir. 1998)). However, "in the context of a Title VII retaliation claim, a materially adverse action 'means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Crawford v. Carroll*, 529 F.3d 961, 970-71 (11th Cir. 2008) (*quoting Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 69, 126 S. Ct. 2405, 2415, 165 L. Ed. 2d 345 (2006)).

MCBOE does not cite any authority for the proposition that a termination which is under administrative appeal is not therefore an adverse employment action. However, other employment actions short of termination pending appeal are routinely held sufficient to satisfy the second prima facie element of a Title VII claim. *See Crawford*, 529 F.3d at 973 (holding that a retaliatory performance appraisal that resulted in a loss of merit pay raise was a sufficiently adverse employment action to support a Title VII claim). Turner-Pugh lost the benefits of her employment and arguably community standing when her employment was terminated. Going by the plain holdings of the Eleventh Circuit, having employment terminated severely changes the terms of employment and is an adverse employment action even pending appeal of that termination.

MCBOE next argues that Turner-Pugh has failed to put forward qualified comparators to support her claim of discrimination. A fellow employee is "similarly situated" when they: (1) "have engaged in the same basic conduct (or misconduct) as the plaintiff"; (2) "have been subject to the same employment policy, guideline, or rule as the plaintiff"; (3) "have been under the jurisdiction of the same supervisor"; and (4) "share the plaintiff's employment or disciplinary history." *Lewis v. City of Union City*, 918 F.3d 1213, 1227–28 (11th Cir. 2019) (en banc). In her response brief, Turner-Pugh appears to recognize the weakness of the avenue of proving a similarly

situated comparator as part of a conventional circumstantial-evidence method in favor of proceeding under the convincing mosaic rubric: "These facts present, at the very least, a convincing mosaic of race/sex based discrimination, though likely as part of a mixed-motive including sexual harassment, and/or retaliation" Doc. 103 at 7; *see also* 4-6. However, Turner-Pugh briefly mentions Maurice Woody as a comparator and states that "Turner-Pugh and Woody both served as Athletic Directors, however, only Woody, a man, was provided a stipend, while Turner-Pugh, a woman, was not." *Id.* at 6. However, Turner-Pugh fails to address any of the relevant factors that would qualify Woody as a proper comparator. Whether Woody is a proper comparator, Turner-Pugh has offered a paucity of evidence to show it. Accordingly, Turner-Pugh's Title VII discrimination claims will be analyzed under the convincing mosaic standard as to the discrimination aspect of this first claim.

Turner-Pugh argues she has presented a convincing mosaic of circumstantial evidence that raises an inference of intentional discrimination MCBOE.

> Aside from the McDonnell Douglas framework, an employee can still survive summary judgment by presenting "circumstantial evidence that creates a triable issue concerning the employer's discriminatory intent." *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011). "A triable issue of fact exists if the record, viewed in a light most favorable to the plaintiff, presents a convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination by the decisionmaker." *Id*. (internal quotation marks omitted). A plaintiff may establish a convincing mosaic by pointing to evidence that demonstrates, among other things, (1) suspicious timing, ambiguous statements, or other information from which discriminatory intent may be inferred, (2) "systematically better treatment of similarly situated employee," and (3) pretext. *Lewis [v. City of Union City]*, 934 F.3d [1169,] 1185 [(11th Cir. 2019)].

*Jenkins v. Nell*, 26 F.4th 1243, 1250 (11th Cir. 2022).

Turning to a mosaic analysis of her discrimination claim, Turner-Pugh first argues that "her denials of Shehan's advances, as well as Shehan's feelings of inadequacy based on their pay differential resulted in Shehan placing Turner-Pugh on administrative leave, recommending her for termination from the Board, advancing untrue accusations in order to have her contract with

the ALSDE cancelled, and barring her from campus during her time on administrative leave." Doc. 103 at 13. Turner-Pugh's Title VII claim is against MCBOE, not Shehan. Doc. 80 at 14. Turner-Pugh alleges multiple incidents of sexually inappropriate behavior toward her by Shehan, the latest occurrence being in October 2022. Doc. 103 at 2. Turner-Pugh alleges that "[a]ll of these events were reported to either one or all of Human Resources Director Marty Hanks, and/or Board members Kenneth Smith and Barbara Turner." *Id.* at 3. However, Turner-Pugh does not state when she made the board members aware of the October 2022 incident. "The burden of causation can be met by showing close temporal proximity between the statutorily protected activity and the adverse employment action." *Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1364 (11th Cir.2007) (*citing Brungart v. BellSouth Telecomm., Inc.*, 231 F.3d 791, 798–99 (11th Cir.2000)). In this instance, Turner-Pugh alleges that she reported sexual misconduct to MCBOE members and she was placed on administrative leave by Shehan all within a three-month period. The timing is arguably suspicious.

Turner-Pugh also argues that she "was targeted for her administration of the 21st Century Grant/ McKinney Vento Homeless Grant. In May of 2022, Turner-Pugh admonished her husband, Principal of JF Shields, Derek Pugh, as well as Sophia Yarber for unauthorized purchases under the 21st Century Grant." Doc. 103 at 13. "Finally, Turner-Pugh was retaliated against for the exercise of political power within the Monroe County School District. Turner-Pugh's mother, Board member Barbara Turner, is a vocal member of the NAACP, whom she would call for support on several issues, and would assist in mobilizing the community for certain causes." *Id.* at 13-14. However, neither of these allegations present a convincing mosaic of events that evidence a pattern of retaliation, specifically because these events do not evidence any protected action taken by Turner-Pugh or animus by MCBOE.

Although Turner-Pugh fails to present a prima facie showing of discrimination under Title VII, there is sufficient evidence for a prima facie showing of retaliation due to the proximity of Turner-Pugh reporting sexual misconduct by Shehan to her termination. However, Turner-Pugh fails to rebut the legitimate, nondiscriminatory reason proffered by MCBOE. MCBOE chose to terminate Turner-Pugh's employment because, after an investigation arising from an anonymous package, the ALSDE terminated the federal grant to MCBOE under which Turner-Pugh served as Program Director for the 21st Century program grant because Turner-Pugh had allegedly falsified time sheets for her work on the program. Doc. 88-8 at 13. Specifically, on November 10, 2022, Alabama Department of Education Director of Federal Programs Molly Killingsworth emailed Shehan stating: "Unfortunately, at this time I'm not able to authorize you to continue with a 21st CCLC program in January because of several concerns including purchasing of items that aren't allowable, teachers being over paid, failing to submit attendance reports, and not having appropriate documentation for all purchases." Doc. 88-15 at 23. As a result of the termination of the program, MCBOE was required to refund $97,307.80 to the State of Alabama. *Id.* at 57. "A legitimate nondiscriminatory reason proffered by the employer is not a pretext for prohibited conduct unless it is shown that the reason was false and that the real reason was impermissible retaliation or discrimination." *Worley v. City of Lilburn,* 408 Fed. Appx. 248, 251 (11th Cir.2011) (unpublished) (citing *St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 515, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993)). Plaintiff cannot merely "recast an employer's proffered nondiscriminatory reasons or substitute [her] business judgment for that of the employer" but rather "must meet that reason head on and rebut it, and the employee cannot succeed by simply quarreling with the wisdom of that reason." *Chapman v. AI Transport,* 229 F.3d 1012, 1030 (11th Cir.2000). Conclusory allegations or unsupported assertions, without more, "are not sufficient to raise an

inference of pretext." *Mayfield v. Patterson Pump Co.,* 101 F.3d 1371, 1376 (11th Cir.1996) (citations omitted); *see also Worley,* 408 Fed. Appx. at 251 (quoting *Mayfield* ). Turner-Pugh admits that "it is impossible to definitively determine exactly what motivated any of the Defendants in their actions…" Doc. 103 at 14. Her argument that the termination was pretextual is as follows: "The claims that Turner-Pugh would have been terminated anyway due to the findings of the ALSDE is purely pretextual, as the Board would not allow Turner-Pugh to defend the accusations made against her and provide the documentation to support her defense, and voted to terminate her prior to a final determination by the ALSDE in accordance with Turner-Pugh's due process rights." *Id.* However, Turner-Pugh does not state what due process right was violated. The ALSD had already made a determination that the 21st Century program of which Turner-Pugh was program director, would be terminated and funds due back to the State. However, Turner-Pugh does nothing to rebut MCBOE's reason for the termination. Thus, the retaliation claim for termination fails also. Defendants' motion for summary judgment is due to be granted as to Turner-Pugh's claims of discrimination and retaliation under Title VII.

**B.    Equal Pay Act Claim**

In Count VI of the Third Amended Complaint, Turner-Pugh alleged that "After her dismissal from the role of Athletic Director, Maurice Woody, Jr., a black male, was given a stipend for the work performed in that position. Plaintiff BARBARIETTA TURNER-PUGH, PH.D. never received any payment for the work she performed as Athletic Director, and was denied pay under that role on the basis of sex/gender." Doc. 80 at 20.

> The Eleventh Circuit recently restated the standard for claims under the EPA:
>
> The EPA prohibits wage discrimination on the basis of sex and "forbids the specific practice of paying unequal wages for equal work to employees of the opposite sex." *Miranda v. B & B Cash Grocery Store, Inc.*, 975 F.2d 1518, 1526 (11th Cir. 1992); 29 U.S.C. § 206(d)(1). We analyze EPA claims under a two-step framework. *Baker v. Upson Reg'l Med. Ctr.*, 94 F.4th 1312, 1317 (11th Cir. 2024). First, the plaintiff

> must make her prima facie case by demonstrating "that an employer pays different wages to employees of opposite sexes 'for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions.'" *Corning Glass Works v. Brennan*, 417 U.S. 188, 195 (1974) (quoting § 206(d)(1)).
>
> Once the plaintiff establishes her prima facie case, the burden shifts to the employer to prove that the difference in pay is justified by one of the EPA's four exceptions: (1) "a seniority system"; (2) "a merit system"; (3) "a system which measures earnings by quantity or quality of production"; or (4) "a differential based on any factor other than sex." *Baker*, 94 F.4th at 1317 (quoting *Brock v. Ga. Sw. Coll.*, 765 F.2d 1026, 1036 (11th Cir. 1985)); see also § 206(d)(1). These exceptions are affirmative defenses for which the defendant bears the burden of proof. *Corning Glass Works*, 417 U.S. at 196-97; *Gosa v. Bryce Hosp.*, 780 F.2d 917, 918 (11th Cir. 1986).

*Williams v. Alabama State Univ.*, No. 23-12692, 2024 WL 5202087, at *3–4 (11th Cir. Dec. 23, 2024). Turner-Pugh alleged that "[a]fter her dismissal from the role of Athletic Director, Maurice Woody, Jr., a black male, was given a stipend for the work performed in that position. Plaintiff BARBARIETTA TURNER-PUGH, PH.D. never received any payment for the work she performed as Athletic Director, and was denied pay under that role on the basis of sex/gender." Doc. 80 at 20. The parties agree that this claim turns on whether MCBOE employee Maurice Woody is a rightful comparator to Turner-Pugh. *See* Docs. 87 at 32; 103 at 15-16. The Defendants argue that "Woody and Turner Pugh are not comparators as they did not perform 'equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions.'" Doc. 106 at 8.

Defendants argue that MCBOE "has never paid an athletic director stipend to a school system athletic director. (Hanks Decl., p. 3) The Board does not currently have a school system athletic director and does not pay anyone a stipend for serving in that capacity. (Id.) Board oversight for athletics is very rarely needed." Doc. 87 at 33. Turner-Pugh argues in response that "[w]hile Defendants have cited that Woody was responsible for a single school, Turner-Pugh was

responsible for several schools in the execution of these duties, however, unlike Woody, Turner-Pugh was provided no stipend for the additional work she completed under this title, due to being a woman." Doc. 103 at 16.

"Woody served as the Athletic Director for Monroe County High School, while Turner-Pugh served as the Athletic Director for the Monroe County School System." Doc. 103 at 15. The issue for this claim is whether Woody, in his role as a high school athletic director, is a sufficient comparator for Turner-Pugh in her role as a school system athletic director.  Current MCBOE Superintendent Marty Hanks submitted an affidavit stating that Woody continues in his capacity as a single-school athletic director and continues to receive a $9,334.34 stipend. Doc. 88-16 at 2. Hanks testified that school athletic directors have many responsibilities, including:

- Overseeing coaches and sports teams at the school;
- Attending athletic events for sports teams at the school;
- Ensuring school compliance with AHSAA bylaws;
- Checking and verifying athlete eligibility; and
- Overseeing annual athletic paperwork/ form requirements.

*Id.* at 2-3. Moreover, Hanks testified that "To my knowledge, the Board has never paid an athletic director stipend to a school system athletic director. The Board does not currently have a school system athletic director and does not pay anyone a stipend for serving in that capacity. Board oversight for athletics is very rarely needed." *Id.* at 3. "The Board has never paid an athletic director stipend to a school system athletic director. (Hanks Decl., p. 3) The Board does not currently have a school system athletic director and does not pay anyone a stipend for serving in that capacity. (Id.)." Doc. 87 at 33.

Turner-Pugh was never athletic director for an individual school, only athletic director of the school district.  Turner-Pugh argues that her responsibilities were identical to those listed by Hanks for Woody (Doc. 103 at 15-16), but Hanks testified that "Board oversight for athletics is

very rarely needed." Doc. 87 at 33. Turner-Pugh argues that "Defendants have not offered, nor can they offer, any such justification for the difference in pay between Turner-Pugh and Woody that is not based upon sex." Doc. 103 at 16. However, the evidence shows that no school district athletic director was ever paid a stipend, regardless of sex. At her deposition, Turner-Pugh was asked about her employment history as described in her responses to interrogatories. She admitted that as part of her duties as director of student services, she was also "counselor supervisor, system accountability coordinator, and system athletic director." Doc. 88-1 at 4. There is no evidence that she received a separate stipend for any of those duties or that any other employee who had the same responsibilities received a stipend for those assignements.

Based on the evidence in the record, Woody received a stipend for his extra work as an individual school athletic director which was distinct from his duties as a principal or transportation director. From the testimony of Hanks and Turner-Pugh, it appears that the role of school system athletic director was considered part of the duties of the student services director, a position whose oversight was "rarely needed," shows some connection to the position which she held, and which has never been the recipient of a stipend regardless of the sex of the school system athletic director, regardless of sex. Accordingly, Defendants' motion for summary judgment is due as to Turner-Pugh's EPA claim.

C.  **Abandoned Claims**

Turner-Pugh concedes to dismissal of Count II – discrimination under Title IX against MCBOE, Count III – defamation of character against MCBOE and Shehan, Count IV – Breach of Contract against MCBOE and Shehan, and Count VII – outrage against Shehan. Doc. 103 at 16, 18. Accordingly, those claims are dismissed with prejudice.

V.     **CONCLUSION**

Accordingly, the Motion for Summary Judgment (Doc. 86) is **GRANTED**, and Plaintiff Barbarietta Turner-Pugh's claims that she brings against Defendants Monroe County Board of Education and Gregory Shehan are **DISMISSED with prejudice**.

A separate judgment will issue pursuant to Fed. R. Civ. P. 58.

**DONE** and **ORDERED** this 14th day of January 2026.

/s/ Terry F. Moorer
TERRY F. MOORER
UNITED STATES DISTRICT JUDGE