# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| **BARBARIETTA TURNER-PUGH**, *et al.*, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | CIV. ACT. NO. 1:23-cv-294-TFM-N |
| ) | |
| **MONROE COUNTY BOARD** ) | |
| **OF EDUCATION**, *et al.*, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is the Motion for Summary Judgment (Doc. 83, filed July 16, 2025) in which Defendants Monroe County Board of Education ("MCBOE") and Gregory Shehan ("Shehan") petition the Court to enter summary judgment in their favor and against Plaintiff Alicia Salter ("Plaintiff" or "Salter") for her claims of sex discrimination under Title VII and a failure-to-accommodate violation of the Americans with Disabilities Act ("ADA"). Having considered the motion for summary judgment, response, reply, and relevant law, the Court finds the motion is due to be **GRANTED**.

## I. JURISDICTION AND VENUE

The Court has subject matter jurisdiction over the claims in this action pursuant to 28 U.S.C. § 1331 (federal question). The Court has personal jurisdiction over the claims in this action because the events that gave rise to this action occurred within this district. *See Consol. Dev. Corp. v. Sherritt, Inc.*, 216 F.3d 1286, 1291-92 (11th Cir. 2000) ("Specific jurisdiction arises out of a party's activities in the forum that are related to the cause of action alleged in the complaint .... General personal jurisdiction, on the other hand, arises from a defendant's contacts with the forum that are unrelated to the cause of action being litigated. The due process requirements for general

personal jurisdiction are more stringent than for specific personal jurisdiction, and require a showing of continuous and systematic general business contacts between the defendant and the forum state."). Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events that gave rise to the claims in this matter occurred in this judicial district.

No party disputes or debates the Court's jurisdiction or venue, and the Court finds adequate support for both.

## II.   BACKGROUND[1]

In October 2020, MCBOE used federal funds (ESSER-II) to contract with two nurses, Salter and her co-plaintiff L'Nari Turner, in addition to their regularly employed school nurses. Doc 85-13 at 1-2. Before becoming a contract nurse, Salter had worked as a substitute nurse with both the MCBOE and Brewton City Board of Education. Doc. 85-1 at 5. Salter signed multiple contracts, each for one year, covering a three-year period which coincided with the availability of ESSER-II funds to cover the expense of the extra nurses. *Id.* at 2; Docs. 82-2, 82-3, and 82-5. There is no dispute that Salter was qualified to serve as a licensed school nurse. Docs. 84 at 22; 102 at 2. Both contract nurses were paid substantially more than the traditionally employed school nurses. Doc. 85-13 at 3. Salter was supervised by MCBOE employee Mindy Mixon whose "duties as lead nurse with the contract nurses were to assign them to work at certain schools within the

---

[1] At this stage of the proceedings, the court takes the facts alleged by Salter as true and construes them in the light most favorable to her. *Stewart v. Booker T. Washington Ins.*, 232 F.3d 844, 848 (11th Cir.2000) (citations omitted) ("In assessing whether there is any 'genuine issue' for trial, the court 'must view all the evidence and all factual inferences reasonably drawn from the evidence in the light most favorable to the nonmoving party,' " ... and 'resolve all reasonable doubts about the facts in favor of the non-movant.' ... "Moreover, the court must avoid weighing conflicting evidence or making credibility determinations...."). Thus, the facts set forth herein are drafted assuming the allegations presented by Salter are true.

school system, coo1·dinate the coverage by nurses at schools, periodically check that they were following doctors' orders and oversight compliance." Doc. 85-13 at 3.

The contracts were identical in their terms, the time and monthly pay amounts being handwritten in as applicable.  By the terms of the contracts, Salter was explicitly serving as an independent contractor, to be paid a flat monthly amount with no benefits, retirement, insurance, workers compensation coverage, or leave. Docs. 85-2, 85-2, and 85-4. The contracts further provided that the contract could be terminated by either party with a 30-day notice. *Id.* Salter worked under the contract from October 19, 2020 through January 13, 2023.  Doc. 102 at 1. On December 13, 2022, MCBOE provided notice to Salter that the contract would terminate on January 13, 2023. *Id.* at 3.

Salter and her co-plaintiffs filed suit on August 1, 2023. Doc. 1. Salter brought two claims: sex discrimination under Title VII and a failure-to-accommodate violation of the ADA. Doc. 80 at 13, 19. Salter alleged that she made requests for accommodations which were never addressed, and her contract was terminated to benefit male employees. *Id.* On July 16, 2025, the Defendants filed a motion for summary judgment, arguing that Salter was an independent contractor rather than an employee and therefore not eligible to bring claims under Title VII or the ADA, and that even if she were an employee, she has not satisfied the elements for those claims. Doc. 85. The motion has been fully briefed and is ripe for decision. No oral argument is needed.

### III. STANDARD OF REVIEW

A party in a lawsuit may move a court to enter summary judgment before trial.  Fed. R. Civ. P. 56(a), (b).  Summary judgment is appropriate when the moving party establishes there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); *see also Greenberg v. BellSouth Telecomms., Inc.*, 498 F.3d 1258,

1263 (11th Cir. 2007) ("Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine [dispute] as to any material fact and that the moving party is entitled to judgment as a matter of law.'"). "[T]he substantive law will identify which facts are material." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see also Ritchey v. S. Nuclear Operating Co.*, 423 F. App'x 955 (11th Cir. 2011) (quoting *Anderson*, 477 U.S. at 248). At the summary judgment juncture, the court does not "weigh the evidence and determine the truth of the matter," but solely "determine[s] whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. Only disputes about the material facts will preclude the granting of summary judgment. *Id*.

The movant bears the initial burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A party must support its assertion that there is no genuine issue of material fact by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). The admissibility of evidence is subject to the same standards and rules that govern admissibility of evidence at trial. *Clemons v. Dougherty County*, 684 F.2d 1365, 1369 n.5 (11th Cir. 1982) (citing *Pan-Islamic Trade Corp. v. Exxon Corp.*, 632 F.2d 539, 556 (5th Cir. 1980)).

Once the movant meets its burden under Fed. R. Civ. P. 56, the non-movant must go beyond the pleadings and designate specific facts showing there is a genuine issue for trial. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). "A genuine issue of material fact exists when 'the evidence is such that a reasonable jury could return

a verdict for the nonmoving party.'" *Moore ex rel. Moore v. Reese*, 637 F.3d 1220, 1232 (11th Cir. 2011) (quoting *Anderson*, 477 U.S. at 248). The court must view the facts and draw all reasonable inferences in favor of the non-moving party. *Id.* (citing *Rosario v. Am. Corrective Counseling Servs., Inc.*, 506 F.3d 1039, 1043 (11th Cir. 2007)); *Greenberg*, 498 F.3d at 1265 ("We view the evidence and all factual inferences therefrom in the light most favorable to the party opposing the motion."). However, to avoid summary judgment, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586 (citations omitted). Conclusory assertions, unsupported by specific facts, that are presented in affidavits opposing the motion for summary judgment are likewise insufficient to defeat a proper motion for summary judgment. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990). "Speculation does not create a *genuine* issue of fact." *Cordoba v. Dillard's, Inc.*, 419 F.3d 1169, 1181 (11th Cir. 2005) (citation omitted). If the evidence is merely colorable or is not significantly probative, summary judgment may be granted. *See Anderson*, 477 U.S. at 249-50 (emphasis in original) (citations omitted). In short, summary judgment is proper after adequate time for discovery and upon motion against a party who fails to make a showing that is sufficient to establish the existence of an element that is essential to that party's case. *Celotex*, 477 U.S. at 322.

Finally, Fed. R. Civ. P. 56(e) also provides that "[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may: (1) give an opportunity to properly support or address the fact; (2) consider the fact undisputed for purposes of the motion; (3) grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it; or (4) issue any other appropriate order." Fed. R. Civ. P. 56(e).

## IV.  DISCUSSION AND ANALYSIS

The Defendants first argue that they cannot be held liable under Title VII or the ADA because Salter was an independent contractor, not a board employee. Doc. 84 at 19. The Eleventh Circuit has held that independent contractors are not protected under Title VII.

> Title VII of the Civil Rights Act of 1964 prohibits discrimination against "any individual" with respect to that individual's terms and conditions of employment because of race or sex. 42 U.S.C. § 2000e-2(a). "The statute does not define 'any individual,' and although we could read the term literally," we don't. *Llampallas v. Mini-Circuits, Lab, Inc.*, 163 F.3d 1236, 1242 (11th Cir. 1998).
>
>  Title VII does not protect everyone; Congress enacted Title VII to regulate only "specific employment relationships." *Id*. at 1243. "We can assume that Congress ... meant to limit the pool of potential plaintiffs under Title VII." *Id*. Only "employees" may bring a Title VII suit. *Id*. at 1242.
>
> Title VII defines "employee" circularly: an employee is "an individual employed by an employer." 42 U.S.C. § 2000e(f). Based on this definition, we have assumed that "employee" should take its "common, everyday meaning." *Cobb v. Sun Papers*, Inc., 673 F.2d 337, 339 (11th Cir. 1982).
>
> "[E]mployee status under Title VII is a question of federal law." *Id*. To determine employment status, we have a hybrid-economic-realities test, examining "the economic realities of the relationship viewed in light of the common law principles of agency and the right of the employer to control the employee." *Id*. at 341. Genuine disputes of material fact regarding a hiring party's right to control or degree of control over the manner and means of performance preclude summary judgment or judgment as a matter of law. *See, e.g., Garcia v. Copenhaver, Bell & Assocs., M.D.'s, P.A.*, 104 F.3d 1256, 1266–67 (11th Cir. 1997) (considering the same employment-status question in the ADEA context); *Daughtrey v. Honeywell, Inc.*, 3 F.3d 1488, 1492–93 (11th Cir. 1993) (considering the same in the ERISA context); Pitts v. Shell Oil Co., 463 F.2d 331, 333–36 (5th Cir. 1972) (considering the same in a common-law context).

*Perry v. Schumacher Grp. of Louisiana*, 809 F. App'x 574, 579 (11th Cir. 2020) (cleaned up). Both Salter and the Defendants have relied on the factors as expressed in *Taylor v. BP Exp., Inc.*, Civ. Act. No. CV-407-182, 2008 U.S. Dist. LEXIS 95313, *7, 2008 WL 5046071, at *3 (S.D. Ga. Nov. 24, 2008) (citing *Cobb v. Sun Papers, Inc.*, 673 F.2d 337, 340 (11th Cir. 1982)). *See* Doc. 84 at

20-26; Doc. 102 at 3-8. The Eleventh Circuit enumerates eleven factors adopted in *Cobb* to consider whether a party is an employee or independent contractor for Title VII review:

> (1) the kind of occupation; whether the work is done under direction of a supervisor or done by a specialist without supervision; (2) the skill required in the particular occupation; (3) whether the "employer" or individual furnishes the equipment used and the place of work; (4) the length of time during which the individual has worked; (5) the method of payment; whether by time or by the job; (6) the manner in which the work relationship is terminated; i.e., by one or both parties, with or without notice and explanation; (7) whether annual leave is afforded; (8) whether the work is an integral part of the business of the "employer";(9) whether the worker accumulates retirement benefits; (10) whether the "employer" pays social security taxes; and (11) the intention of the parties.

*Cobb*, 673 F.2d at 340.

Similarly, the Supreme Court has adopted a multi-factor, common-law agency test to determine whether the plaintiff was an employee under the ADA. *Clackamas Gastroenterology Associates, P.C. v. Wells*, 538 U.S. 440, 448 (2003). Courts in the Eleventh Circuit have used the same factors for both Title VII and ADA claims involving a dispute over employment versus independent contractor status. *See Curry v. W. Express, Inc.*, Civ. Act. No. 7:23-CV-30 (WLS), 2025 U.S. Dist. LEXIS 55873, at *21, 2025 WL 919384, at *8 (M.D. Ga. Mar. 26, 2025) ("Plaintiff has, therefore, failed to sufficiently allege that he was an employee within the meaning of Title VII and the ADA."). The parties argue the same eleven *Cobb* factors. Doc. 84 at 20; Doc. 102 at 4.

   1. **Kind of occupation; whether the work is done under direction of a supervisor or done by a specialist without supervision**

The first factor "considers whether Plaintiff performed the "type of work done by a specialist without supervision." *Taylor*, 2008 U.S. Dist. LEXIS 95313, at *7, 2008 WL 5046071, at *3. The Defendants argue that Salter received little day-to-day supervision and that she was a specialist by means of her degree and state board certification as a nurse. Doc. 84 at 21-22. Salter

argues that Mixon handled Salter's scheduling and told her where to go and what to do. (Doc. 102 at 4). Salter did not elaborate on what she was told to do, or the degree of detail, by Mixon during her deposition. *See* Doc. 99 at 42. It is clear from the record that Salter worked at different schools and coordinated with Mixon regarding which schools she would serve and when she would be absent. Doc. 85-1 at 15; Doc. 99 at 41-42. Based on the record, there is insufficient evidence to show that the degree of supervision given to Salter exceeded determining which school she was to work at and when she could be out of work. There is no indication in the record that the decisions and actions taken by Salter while she was serving as a school nurse were subject to detailed supervision. As was the case in *Cobb*, the evidence shows that there "was no 'supervision' of how the work was to be done and that the direction given was a 'typical' way of dealing with an independent contractor." *Cobb*, 673 F.2d at 342. This factor weighs in favor of Salter being an independent contractor.

### 2. Skill required in the particular occupation

In this case, there is evidence that the skill required was that of a licensed nurse, and the role was filled by full-time, substitute, and contract-based nurses. Although the position clearly requires the skill a licenses nurse would possess, there is no evidence that the skill required exceeded the parameters of a typical employment situation. This factor does not favor either side.

### 3. Whether the "employer" or individual furnishes the equipment used and the place of work

It is undisputed in this case that the equipment and supplies for the work to be performed was supplied by the MCBOE. Doc. 85-5 at 1. There is no evidence that the equipment or supplies were unusual or complex or differed between contract and employed nurses. This factor weighs somewhat in favor of employment.

### 4. Length of time during which the individual has worked

Salter had previously worked as a substitute school nurse and hoped that her contract work would assist her in attaining a full-time school nurse position. Doc. 85-1 at 5-6; Doc. 99 at 32. Her work relevant to the present matter began on October 19, 2020, and Salter signed a series of new contracts for the following year through the last contract which was scheduled to run through July 31, 2023. Doc. 85-1 at 12. The Defendants argue that because the contracts where each for a year or less that the term of employment was one year. Doc. 84 at 24. Salter argues that all the contracts were intended to form a term of three years. The length of the contracts points to a defined project rather than traditional employment. "As for the fourth factor, the longer the working relationship, the more likely the individual is an employee." *Curry*, 2025 WL 919384, at *7 (citing *Lockett v. Allstate Ins. Co.*, 364 F. Supp. 2d 1368, 1375 (M.D. Ga. 2005)); *see also Taylor*, 2008 WL 5046071, at *4 ("The short duration of the working relationship weighs in favor of a finding that Plaintiff is an independent contractor."). In this case, Salter had worked for MCBOE from October 19, 2020, to January 13, 2023, a little over two years. Salter's contract was set to end in July 2023. The length of Salter's tenure with MCBOE was further linked to availability of limited federal funding from ESSER-II. Doc. 85-12 at 2. Shorter tenures tend to evidence intent of a contract as opposed to longer arrangements more resembling traditional employment. The arrangement in this case was longer than a simple, discreet task, but the duration was determined almost entirely by the availability of limited outside funding for a specific event, i.e. the COVID pandemic. Based on the length of the tenure and the nature of the factors that gave rise to the position, this factor weighs, if at all, slightly in favor of employment.

### 5. Method of payment; whether by time or by the job

Especially telling is the method by which Salter was compensated. The contracts executed by the parties specify that Salter would be paid a flat monthly rate for her services. Docs. 85-2 at 1; 85-3 at 1, and 85-4 at 1. The contracts further provided that MCBOE would not collect state or federal taxes on Salter's income, no fringe benefits would be provided, no unemployment compensation benefits would be paid, no insurance of any kind would be provided to Salter, and Salter would not receive any paid leave. Doc. 85-5 at 1-2. Salter received a form 1099 rather than a W2 for her records and was paid as a vendor rather than by payroll. Docs. 85-9 at 7; 85-12 at 2. Salter was paid exclusively from ESSER-II funds. Doc. 85-12 at 2. As a contract nurse, Salter was paid more than school nurses who were traditionally employed by MCBOE. Doc. 85-7 at 11. There is no clear-cut line between Salter's services being based on time or by the job because the job is to be available while students are present at the school, not a specific task, number of students, or number of hours of productivity. There is nothing about the method of compensation that weighs in favor or Salter being an employee, and this factor weighs heavily in favor of Salter being an independent contractor.

### 6. Manner in which the work relationship is terminated; i.e., by one or both parties, with or without notice and explanation

The contract in force at the time of the termination contains the following provision: "Either party may terminate this Agreement at any time by giving 30 days' written notice to the other party of the intent to terminate." Doc. 85-4 at 2. The record indicates that this is the manner in which the arrangement was terminated, i.e., MCBOE gave written notice to Salter on December 13, 2022, that the contract would be terminated on January 13, 2023. Doc. 85-1 at 17. Because the work relationship terminated according to the terms of the contract, this factor weighs heavily in favor of Salter being an independent contractor.

**7. Whether annual leave is afforded**

No annual leave was afforded by the terms of the contract, thus weighing in favor of Salter being an independent contractor.

**8. Whether the work is an integral part of the business of the "employer"**

The defendants argue that "Salter's work as a school nurse was not essential to educating students. Some schools do not have nurses." Doc. 84 at 25. Salter responds that "Alabama Legislature has held that school nurses are an integral and statutorily necessary part of education within the State. (See §§16-22-16; 16-30a-5, Ala. Code, 1975) As a matter of law, the State of Alabama has decided that school nurses are an integral part of the public education of children, and therefore, this factor supports a finding of employment." Doc. 102 at 7. Salter is correct that under state statute, "The State Department of Education and the Alabama Institute for Deaf and Blind shall require the employment of school nurses in each local school system." Ala. Code § 16-22-16. There is no dispute that MCBOE employs school nurses as is required by statute. While it is clear that having school nurses is integral to the enterprise of education as evidenced by state law, it is also undisputed that the nurses MCBOE hired on contract were pursuant to a federally funded response to the COVID epidemic. The fact that the additional nurses were contracted because of the pandemic does not negate that school nurses are integral to the education of the whole child. This factor weighs in favor of employment.

**9. Whether the worker accumulates retirement benefits**

Pursuant to the contract, Salter did not accumulate retirement benefits, thus weighing in favor of Salter being an independent contractor.

**10. Whether the "employer" pays social security taxes**

Pursuant to the terms of the contract, MCBOE did not pay social security taxes on behalf of Salter, thus weighing in favor of Salter being an independent contractor.

**11. Intention of the parties.**

The intent of the parties is the most convincing factor in this analysis. Salter had been a substitute nurse and had aspirations to become a full-time school nurse with the MCBOE. Each of the contracts signed by Salter is styled as "Independent Contractor Agreement." Docs. 85-2 at 1; 85-3 at 1; and 85-4 at 1. The contract contains the following provision:

> 5. Independent Contractor Status
>
> Contractor is an independent contractor, and neither Contractor nor Contractor's employees or contract personnel are, or shall be deemed, Client's employees. In its capacity as an independent contractor, Contractor agrees and represents, and Client agrees, as follows
>
> Contractor agrees to perform the services described in Exhibit A for the above stated rate of pay. Contractor agrees to comply with this contract and not exceed the conditions of this contract concerning time worked. Contractor agrees to provide adequate and sufficient documentation pf services performed and times worked to Contractor's Supervisor. Contractor understands and agrees total compensation for these services cannot and will not exceed the above stated Total Compensation.

Doc. 85-5 at 1-2. Further, when MCBOE terminated the contract in force, MCBOE offered Salter another contract that paid her by the day rather than the month, and the rate of pay was still higher than that paid to full-time school nurses. Even construing the facts in the light most favorable to Salter, it is clear from the record that the parties intended the work arrangement to be that of an independent contractor.

Similarly, viewed as a whole, the facts show that Salter was an independent contractor. The factors that weigh in favor of employment are largely a result of the type of work being done, i.e., that nurses would arrive at work stations with the equipment and supplies they need each school

day. Salter was paid by time rather than by the job, but this is specifically because her services were only needed while students were in school. Although Salter had worked for MCBOE for over two years under contract, the parties clearly envisioned that this arrangement was not permanent and was in place for a specific period, i.e., the COVID pandemic which necessitated extra staffing beyond the statutorily required school nurses commonly associated with public schools. As a matter of law, Salter was an independent contractor and as such her work relationship cannot serve as the basis for claims under Title VII or the ADA.

## V.    CONCLUSION

Accordingly, the Motion for Summary Judgment (Doc. 83) is **GRANTED**, and Plaintiff Patricia Alicia Salter's claims that she brings against Defendants Monroe County Board of Education and Gregory Shehan are **DISMISSED with prejudice**.

A separate judgment will issue pursuant to Fed. R. Civ. P. 58.

**DONE** and **ORDERED** this 14th day of January 2026.

>  /s/ Terry F. Moorer
>  TERRY F. MOORER
>  UNITED STATES DISTRICT JUDGE